IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DERRICK ADROW                                                                                                          PLAINTIFF

             v.                                 Civil No. 11-2024

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                          DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Derrick Adrow, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

I.   **Procedural Background:**

The plaintiff filed his applications for DIB and SSI on November 27, 2007, alleging an onset date of May 1, 2004, due to obesity, anxiety disorder, and depression. Tr. 136-146. His applications were denied initially and on reconsideration. Tr. 72-75, 91-102.

An administrative hearing was held on April 15, 2009. Tr. 8-71. Plaintiff was present and represented by counsel. At this time, plaintiff was 51 years of age and possessed a high school education. Tr. 15. He had past relevant work ("PRW") experience as a parts stocker and an assembler on an appliance production line. Tr. 85.

On August 26, 2009, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's obesity did not meet or equal any Appendix 1 listing. Tr. 81-83. She found that plaintiff maintained the residual functional capacity ("RFC") to perform medium work. Tr. 83-85. With the assistance of a vocational expert, the ALJ then found that plaintiff could still perform his PRW as a parts stocker and appliance assembler. Tr. 85.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on January 14, 2011. Tr. 1-5. Subsequently, plaintiff filed this action. Doc. # 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. Doc. # 11, 12.

## II.     Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

### A.      The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

Of particular concern to the undersigned is the ALJ's failure to properly consider the treating source medical evidence from the Veteran's Administration. The SSA regulations set forth how the ALJ weighs medical opinions. The regulations provide that "unless [the ALJ] give[s] a treating source's opinion controlling weight . . . [the ALJ] consider[s] all of the following factors in deciding the weight [to] give to any medical opinion": (1) examining relationship, (2) treating relationship; (3) supportability of the opinion; (4) consistency; (5) specialization; and (6) "any factors [the applicant] or others bring[s] to [the ALJ's] attention." 20 C.F.R. § 404.1527(d). The regulations provide that if the ALJ finds "that a treating source's opinion on the issue(s) of the nature and severity of [the applicant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the applicant's] record, [the ALJ] will give it controlling weight." *Id.* at § 404.1527(d)(2) (emphasis added).

We are also troubled by the ALJ's conclusion that Plaintiff's mental impairment was non-severe. A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms. 20 C.F.R. § 404.1508.

In the present case, the ALJ relied on the one time mental assessment of Dr. Kathleen Kralik conducted in January 2008, to determine that Plaintiff's mental impairment was non-severe. Tr. 254-259. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). At this time, Plaintiff did not seem to be manifesting or reporting any clear signs of mental illness of a type suggestive of a disability or at a severity level that would impeded occupational functioning. However, she did diagnose him with polysubstance dependence in full remission, adjustment disorder with mixed anxiety and depressed mood, and attention deficit hyperactivity disorder.

Beginning in late 2008, Plaintiff was treated by various doctors at the Veteran's Administration Mental Health Clinic. Tr. 313-314, 320-321, 330-333, 336-338, 341-342, 347, 507-512, 530-531, 537-543, 554-573. These records indicate that Plaintiff's mental status began to deteriorate. In December 2008, his mother sought out mental health treatment for him based on her concerns regarding incorrect statements he had made about his past (*i.e*, playing football in high school, being shot in the head, being raised in California). Tr. 348. He was initially prescribed Citalopram (Celexa) and Risperidone (Risperdal), but the Risperidone was later discontinued.[1] Tr. 314. In treatment sessions, Plaintiff's mother told the doctor that Plaintiff had experienced a nervous breakdown approximately three years earlier, was a recluse, had an extensive history of violence and domestic violence toward family members, was easily agitated, made terroristic threats regularly, lacked motivation, and slept all day and stayed awake all night.

---

[1] Plaintiff also seems to have been confused regarding the Risperidone prescription. He told the doctor that he was only suppose to take it for four or five days. Tr. 314.

Plaintiff's own reports concerning his symptoms were often inconsistent. At times he reported depression, anxiety, and stress, and other times denied experiencing these symptoms. However, Plaintiff did not see himself as ever being able to succeed or accomplish anything and reported being unable to stop eating, having gained over 100 pounds in the previous year. Plaintiff also denied hallucinations or psychosis, but reported periods of time when he sat and "dazed," and admitted to going for weeks at a time without bathing. Tr. 341. The doctors found his case to be confusing, given that Plaintiff's reports were inconsistent and often in conflict with his mother's reports. And, there did appear to be family conflict. In spite of this, Drs. Walter Traxler and Aparna Ghosh both acknowledged the possibility of a psychotic process. In fact, Dr. Ghosh stated that Plaintiff's thought processes were somewhat convoluted. Tr. 314. Dr. Mohan Kaza also indicated that Plaintiff's speech was mumbled and it appeared to take a lot of effort for him to speak. Tr. 508. He believed Plaintiff's depression may be due to his excessive weight, and prescribed Wellbutrin. Mr. Brian Tankersley, a physician's assistant with the VA, noted that Plaintiff appeared depressed, was administered the depression screen and scored a seven which was a positive result, and in his opinion met the criteria for a diagnoses of both depression and mood disorder. All treating staff agreed that Plaintiff's global assessment of functioning ("GAF") score was between 50 and 60, which is indicative of moderate to serious symptoms. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR ("DSM IV-TR") 34 (4th ed. 2000)[2].

---

[2] We note the ALJ's comment that Plaintiff's GAF was based on environmental factors. However, according to the DSM IV-TR, the GAF scale is to be rated with respect only to psychological, social, and occupational functioning. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 32 (4th ed. 2000). The instructions specify that any impairment in functioning due to physical or environmental limitations is not to be included. *Id.*

Records also indicate that Plaintiff had an extensive criminal history. He was arrested and charged with domestic violence in 2008 for attacking his sister. Tr. 194-203. In January 2009, Plaintiff was sentenced to three years probation for this incident. Tr. 211-214, 222, 332-333. He was also charged with domestic battery in 2007, for attacking his step father, and had been charged with terroristic threat on multiple occasions. Tr. 194-203. It also appears that a petition for involuntary commitment was filed by Plaintiff's mother and stepfather in 2007. Tr. 220.

After reviewing the evidence that was before the ALJ, the undersigned can not find substantial evidence to support the ALJ's non-severe rating. The evidence from the VA Mental Health Clinic should have been considered and discussed by the ALJ. Accordingly, the case will be remanded for further consideration of Plaintiff's mental impairments.

Additional relevant medical records submitted to and considered by the Appeals Council, reveal low mood, little self esteem, no friends, continued poor sleep, impaired memory, confusion, and continued hopelessness. Tr. 459, 480-488, 496, 502, 507-508, 835-836. In October 2009, his mother even reported that he would sit on the front porch and laugh when no one else was around. At times, Plaintiff admitted to suffering from depression and at other times, blamed his condition on stress. Mental health providers at the VA continued to diagnose Plaintiff with depression and mood disorder.

On January 12, 2010, approximately one month after the ALJ's decision, Plaintiff's doctors at the VA completed a medical source statement. Tr. 663-665. On this form, they indicated that Plaintiff was markedly limited with regard to remembering locations and work-like procedures; understanding, remembering, and carrying out short and simple, as well as detailed

instructions; maintaining attention and concentration for extended periods; performing activities within a schedule; maintaining regular attendance; being punctual within customary tolerances; sustaining an ordinary routine without special supervision; making simple work-related decisions; completing a normal workday and work week without interruptions from psychologically based symptoms; performing at a consistent pace and without and unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; responding appropriately to changes in work setting; being aware of normal hazards and taking appropriate precautions; traveling in unfamiliar places or using public transportation; and, setting realistic goals or making plans independently of others. The doctor indicated that physical/medical problems would take a notably significant period of time to overcome, due to his mental impairments. Tr. 663-665.

Plaintiff also submitted medical records to the Appeals Council, dated after the ALJ's decision, documenting his continued treatment for mental impairments.[3] Tr. 668-685, 689-691, 705-711, 716-717, 721-820, 832-847. Mood swings, difficulty going to sleep and staying asleep, loss of interest in things he had once enjoyed, lack of motivation, suicidal thoughts, and decreased energy were among his noted symptoms. Plaintiff also began hearing voices in July 2010, at which time Dr. Pearl Beguesse diagnosed him with psychotic disorder not otherwise specified. Tr. 816-817. In August 2010, Plaintiff was hospitalized for hearing voices and talking to himself, and was noted to be delusional. At this time, he would not take his medication. Records reveal daily attempts to harm himself by throwing himself against the wall. As a result, he was diagnosed with atypical psychosis and hospitalized for five days for fear he would act on

---

[3]These records were also considered by the Appeals Council.

the demeaning content of his auditory hallucinations. Tr. 705-708, 721-806-814. In September, Plaintiff's mother telephoned the clinic to inform them that he continued to have conversations with people who were not present, made threatening remarks, and became agitated when questioned about his behavior. Tr. 716. Dr. Beguesse spoke to Plaintiff, who denied hearing voices, but also denied having missed his follow-up appointment in August which records show he failed to attend. Tr. 716. Plaintiff indicated that he was taking the medication sent home with him in August, but was not suppose to begin the medications mailed to him until September 28. He refused to come in the following day for an appointment, and Dr. Beguesse noted that Plaintiff became agitated. Plaintiff's mother was advised to take him to a safe environment, if she felt it necessary. Tr. 716-717

In December 2010, more than one year after the ALJ's decision, Dr. Pearl Beguesse completed a medical source statement finding Plaintiff to have moderate or marked limitations in all areas of functioning. Tr. 689-691. The assessment does not, however, indicate the time period it encompasses.

Given that the above additional medical evidence was submitted to and considered by the Appeals Council, we are required to consider it when determining whether substantial evidence exists to support to the ALJ's decision. *Kitts v. Apfel,* 204 F.3d 785, 786 (8th Cir.2000) (per curiam) (when Appeals Council considers new evidence, this court considers whether ALJ's decision is supported by substantial evidence in the record as a whole, including new evidence). Because this evidence does tend to reveal a significant mental impairment prior to the rendering of the ALJ's opinion that has escalated since the opinion, we believe this evidence should be submitted to the ALJ for review, prior to the rendering of an opinion on remand. We do believe

9

this evidence would have impacted the ALJ's decision, had it been in the administrative record. *Flynn v. Chater,* 107 F.3d 617, 621 (8th Cir. 1997).

IV. **Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the plaintiff, should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 8th day of November 2011.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)